UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HARVEY DEANDRE MCDANIELS, | Case No. 3:21-cv-00005-MMD-CSD |
| Petitioner, | ORDER |
| v. | |
| NDOC WARDEN GITTERE, *et al*., | |
| Respondents. | |

**I.  SUMMARY**

Respondents have answered Petitioner Harvey DeAndre McDaniels' 28 U.S.C. § 2254 *pro se* habeas corpus petition challenging his state criminal conviction under a guilty plea. (ECF No. 16.) McDaniels did not file a reply in support of his petition.[1] As discussed below, the petition lacks merit and will be denied.

**II.  BACKGROUND**

In August 2017, McDaniels pleaded guilty under *Alford*[2] to voluntary manslaughter with use of a deadly weapon. (ECF No. 18-3.)[3] The plea arose from an incident in which McDaniels and his girlfriend were asleep in his house when a noise woke them up. (ECF No. 17-1.) McDaniels picked up a gun, called out asking who was there, and then fired twice at the closed bedroom door. McDaniels opened the door, went down the hallway, and shot a man in his living room, asking repeatedly how he got in the house. McDaniels

---

[1]The answer was served electronically served on McDaniels at his address of record but was returned as undeliverable. (ECF No. 24.) McDaniels later updated his address, and the Court directed the Clerk of Court to send him a courtesy copy of the answer. (ECF No. 30.)

[2]*North Carolina v. Alford*, 400 U.S. 25 (1970).

[3]Exhibits referenced in this order are exhibits to respondents' answer (ECF No. 16), and are found at ECF Nos. 17-19, 21.

realized he knew the victim. Apparently afraid and recognizing what he had done, McDaniels pulled the victim out of the house; he died several weeks later from his injuries. (ECF Nos. 17-1, 18-8.)

The guilty plea stipulated to two to five years plus a consecutive one to three years for the deadly weapon enhancement. (ECF No. 25.) The plea was conditional; it provided that if the court failed to follow the negotiation, McDaniels could withdraw his plea. It also stated that if McDaniels failed to interview with the Department of Parole and Probation (P&P), the State would have the unqualified right to argue for any legal sentence. (*Id*.) McDaniels failed to interview with P&P. (ECF No. 18-8.) The State then argued for two consecutive terms of four to ten years. The court sentenced McDaniels to two consecutive terms of two to ten years. (*Id*.) Judgment of conviction was entered on January 24, 2018. (ECF No. 18-10.)

The Nevada Court of Appeals affirmed his conviction in July 2019, and the Nevada Supreme Court affirmed the denial of his state postconviction habeas corpus petition in September 2020. (ECF Nos. 19-8, 19-23.) McDaniels dispatched his federal habeas petition for mailing about December 2020. (ECF No. 5.)

### III.    LEGAL STANDARDS

####     a.  AEDPA Standard of Review

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standards for this Court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *See, e.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id*. at 973. Rather, AEDPA requires substantially more deference:

> . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *See Cullen*, 563 U.S. at 181.

### b.  Ineffective Assistance of Counsel

Ineffective Assistance of Counsel ("IAC") claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *See Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *See id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id*. A reasonable probability is "probability sufficient to undermine

4

confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *See id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See id*.

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that "[w]e take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *See Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (internal quotations and citations omitted).

McDaniels pleaded guilty on the advice of counsel. The United States Supreme Court has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review." *Bousley v. U.S*., 523 U.S. 614, 621 (1998). A valid guilty plea is one that is both knowing and voluntary. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969). The habeas petitioner bears the burden of establishing that the plea was not knowing or voluntary. *See Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006). To determine whether a plea is valid is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56 (quoting *Alford*, 400 U.S. at 31). Where a defendant was represented by counsel during the plea process, and enters a plea based on advice from counsel, the voluntariness of the plea depends on whether the advice "was within the range of competence demanded of attorneys in criminal cases," not based on whether the court would retrospectively consider counsel's advice to be right or wrong. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). Thus, McDaniels "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective] . . .

and that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 56-57, 59; *Lambert v. Blodgett*, 393 F.3d 943, 980-981 (9th Cir. 2004).

IV. **INSTANT PETITION**

   a. **Ground 1**

McDaniels contends that his plea counsel was ineffective for failing to withdraw the guilty plea when the state district court imposed a harsher sentence than stipulated in the plea agreement. (ECF No. 5 at 16-24.)

Defense counsel Dan Winder acknowledged at sentencing that McDaniels had failed to interview with P&P. (ECF No. 18-8 at 9-13.) But he also argued that nothing had occurred to change the conditional nature of the agreement. The prosecutor contended that the plea deal belied this assertion:

> . . . if you look at the Guilty Plea Agreement, and I think counsel can agree with the State, that when we structured this negotiation, the two to five with the consecutive one to three, what we were talking about it being conditional is if the Court on its own wanted to change the terms of -- sentence the Defendant to a four to ten with a consecutive four to ten. That part is conditional. If you flip the page there is also on page two from line four that the Defendant agrees if he fails to interview, fails to appear at any subsequent case or an independent magistrate, by affidavit review, confirms probable cause against me for new criminal charges and we exclude minor traffic, then the State retains the right to argue. The Defendant was canvassed about all that. In fact, the Defendant actually wrote a letter to the Court talking about how he didn't interview. So, he knew he didn't interview and he had breached one of the terms of the contract.

(*Id*. at 10.)

The court concluded that the plea agreement provided that it was a conditional plea if the court failed to follow the negotiation, but the State was only bound by the negotiation if McDaniels interviewed with P&P. (*Id*.) Accordingly, the court determined that McDaniels was not permitted to withdraw his plea. The plea had originally stipulated to a term of two to five years with a consecutive term of one to three years. No longer bound by the negotiation, the State then argued for two consecutive terms of four to ten

years. (*Id*. at 13.) The court sentenced him to two consecutive terms of two to ten years. (*Id*. at 36.)

Affirming the denial of this claim, the Nevada Supreme Court noted that defense counsel had argued at sentencing that McDaniels retained the option of withdrawing his plea:

> McDaniels has not demonstrated deficient performance or prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Counsel argued at sentencing for the withdrawal of McDaniels' plea, and the district court rejected counsel's arguments. McDaniels has not identified what additional argument counsel should have raised in a written motion and has not shown that such a motion would have been meritorious. The district court therefore did not err in denying this claim without an evidentiary hearing.[FN2] *See Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006) ("Trial counsel need not lodge futile objections to avoid ineffective assistance of counsel claims.").
>
> [FN2: Insofar as McDaniels claims that he was denied his right to argue that he acted in self-defense, he waived the right to raise that defense when he pleaded guilty, and that claim does not warrant relief.]

(ECF No. 19-23 at 3-4.)

The record does not support McDaniels' claim. His counsel presented a thorough argument at sentencing that his client's failure to interview with P&P did not affect the conditional nature of the guilty plea. The court considered his position and rejected it. The court noted, "I think [defense counsel has] done a good job of preserving that argument for appeal." (ECF No. 18-8 at 13.) McDaniels points to no additional arguments that counsel should have offered. He has failed to demonstrate that the Nevada Supreme Court's decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 1.

### b. Ground 2

McDaniels contends that he did not enter into his plea knowingly and voluntarily because he was not canvassed regarding the State regaining the right to argue for a longer sentence than stipulated in the plea agreement. (ECF No. 5 at 25-31.)

McDaniels signed the guilty plea agreement on August 8, 2017. (ECF No. 18-3.) The agreement provided:

> Both parties stipulate to a sentence of two (2) to five (5) years in Nevada Department of Corrections for the Voluntary Manslaughter plus a consecutive term of one (1) to three (3) years in NDOC for the Deadly Weapon Enhancement. Additionally, the State agrees not to refer the case to the federal government for prosecution. Finally, this is a conditional plea, if the Court fails to follow the negotiation the Defendant may withdraw his plea and proceed to trial.
>
> …
> I understand and agree that, if I fail to interview with the Department of Parole and Probation (P&P) . . . the State will have the unqualified right to argue for any legal sentence . . . .
>
> Otherwise I am entitled to receive the benefits of these negotiations as stated in this plea agreement.

(*Id*. at 2-3.)

During the plea canvass, the state district court questioned McDaniels as to whether he had read and understood the plea agreement and whether he had thoroughly discussed it with counsel:

> COURT: All right. And, Mr. McDaniels, as I said I must be satisfied that you're doing this freely and voluntarily. Are you doing this freely and voluntarily?
>
> DEFENDANT: Yes, ma'am.
>
> COURT: Other than what's contained in the written plea of guilty, have any promises or threats been made to induce you to enter your plea?
>
> DEFENDANT: No, ma'am
>
> COURT: All right. Prior to signing the written plea of guilty, did you read it?
>
> DEFENDANT: Yes, ma'am.
>
> COURT: Did you understand everything contained in the written plea of guilty?
>
> DEFENDANT: Yes, ma'am.

9

COURT: All right. And did you have -- also have an opportunity to read the Amended Information charging you with the felony crime of voluntary manslaughter with use of a deadly weapon?

DEFENDANT: Yes, ma'am.

COURT: And did you understand everything contained in that Amended Information?

DEFENDANT: Yes, ma'am.

COURT: And did you have a full and ample opportunity to discuss your plea of guilty as well as the charge to which you're pleading guilty with your lawyer, Mr. Winder, and your other lawyer, Mr. Dorman?

DEFENDANT: Yes, ma'am.

COURT: Okay. And do you feel like your lawyers spent enough time with you explaining everything and going over everything in your case?

DEFENDANT: Yes, ma'am.

COURT: Okay. And did your lawyers answer all your questions and address all of your concerns to your satisfaction?

DEFENDANT: Yes, ma'am.

COURT: And is it your desire today to enter a plea of guilty pursuant to the *Alford* decision wherein you will deny the facts constituting the offense but the State has the opportunity to state what facts the State would prove if this matter were to proceed to trial?

DEFENDANT: Yes, ma'am.

. . .

MR. WINDER [defense counsel]: And, Your Honor -- and you didn't read for the record that the parties have stipulated to –

THE COURT: I see that. That is actually part of the record in the Guilty Plea Agreement, but I will state it on the record. The parties have stipulated to a sentence to a two to five years on the voluntary manslaughter plus a consecutive term of one to three years for the weapons enhancement. Both sides are going to recommend that to the Court. And you understand that the matter of sentencing is still strictly up to me; do you understand that?

THE DEFENDANT: Yeah.

    THE COURT: But both sides will try to convince me to give you that; do you understand that?

    THE DEFENDANT: Yes, ma'am.

    . . .

    THE COURT: . . .Both sides are going to recommend that the Court give you a two to five on the voluntary manslaughter and a consecutive one to three for the deadly weapon enhancement.

    MR. WINDER: And, Your Honor, what he's also reading is there is a line that indicates that it's conditional. That if you -- if the Court doesn't follow –

    THE COURT: Right. So, if we don't follow it then you could withdraw your plea –

    THE DEFENDANT: Okay.

    THE COURT: -- and that'll be up to you.

    THE DEFENDANT: Okay.

    THE COURT: If you -- say the judge gave you two to five and a one to four, you may decide I want to live with that even though it's not the stipulated sentence rather than withdrawing my plea. But you would have the right to withdraw your plea if you wanted to do that; do you understand that?

    THE DEFENDANT: Yes, ma'am.

    THE COURT: It's still going to -- it would be up to you. Any questions?

    THE DEFENDANT: No, ma'am.

    THE COURT: All right. Thank you. . . All right. So, you got to stay out of trouble, you got to go to P and P; you got to be available for your lawyer when he wants to contact you, and you have to come back to Court on the date we gave you. All right.

(ECF No. 18-4 at 4-11.)

The Nevada Court of Appeals affirmed his conviction and plea:

    McDaniels contends the district court abused its discretion by rejecting the stipulated, conditional sentence. The district court has wide discretion in its sentencing decision. *Chavez v. State*, 125 Nev. 328, 348, 213 P.3d 476, 490 (2009). We will not interfere with a sentence imposed by the district court that falls within the parameters of relevant sentencing statutes "[s]o

>long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence." *Silks v. State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976).
>
>The sentence imposed is within the parameters provided by the relevant statutes. *See* NRS 193.165(1); NRS 200.080. And McDaniels does not allege the district court relied on impalpable or highly suspect evidence. Further, as McDaniels acknowledged that he understood during his plea canvass, the district court was not bound by the plea agreement. For these reasons, we conclude the district court did not abuse its discretion by sentencing McDaniels to terms in excess of those in the plea agreement.

(ECF No. 19-8 at 2-3.)

The Supreme Court of Nevada also concluded that the doctrine of the law of the case precluded McDaniels from relitigating the claim in his state postconviction proceedings:

>Appellant Harvey Deandre McDaniels first argues that the district court should have allowed him to withdraw his guilty plea when the State argued for a more severe sentence than the parties had originally stipulated. The guilty plea agreement provided that the State would be relieved of its obligation to argue for the stipulated sentence if McDaniels failed to interview with the Department of Parole and Probation, as McDaniels failed to do. The Court of Appeals considered and rejected this claim on direct appeal. *McDaniels v. State*, Docket No. 75074-COA (Order of Affirmance, July 17, 2019). The doctrine of the law of the case prevents re-litigation of this claim. *See Hall v. State*, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975). The district court therefore did not err in denying this claim without an evidentiary hearing. *See Nika v. State*, 124 Nev. 1272, 1300-01, 198 P.3d 839, 858 (2008) (providing that a petitioner is entitled to an evidentiary hearing when the claims asserted are supported by specific factual allegations that are not belied or repelled by the record and that, if true, would entitle the petitioner to relief).

(ECF No. 19-23 at 2-3.)

McDaniels is correct that the State's regaining of the right to argue was not explicitly discussed at the change of plea hearing. Still, he has not shown that he did not voluntarily, knowingly, and intelligently enter into the plea agreement. When McDaniels entered his plea, the court admonished, "[s]o, you got to stay out of trouble, you got to go to P and P; you got to be available for your lawyer when he wants to contact you, and you

have to come back to Court on the date we gave you. All right." (ECF No. 18-4 at 11.) He faced a sentence of up to eight to 20 years but was able to plead to a stipulated sentence of three to eight years. Again, counsel argued at sentencing that his client's failure to interview with P&P did not affect the conditional nature of the guilty plea. But the court interpreted the agreement as the State did—that McDaniels lost the right under the plea deal to a conditional plea when, as stated in the agreement, he failed to interview.[4] Notably, at sentencing, the judge opined that she did not think whether a person showed up for their P&P interview had any bearing on the dangerousness of the person or the safety of the community and that for that reason, she disliked that particular term in plea agreements. (ECF No. 18-8 at 10-11.) The judge explained that she focused on factors such as the offense, priors, and whether the person has gotten into trouble while out of custody in making sentencing determinations. (*Id*. at 12.) McDaniels has failed to demonstrate that the state appellate court decisions were contrary to or involved an unreasonable application of *Strickland*. *See* 28 U.S.C. § 2254(d). The court denies relief as to ground 2.

Therefore, the petition is denied in its entirety.

## V.     CERTIFICATE OF APPEALABILITY

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

---

[4] The court at sentencing also pointed out that the State regaining the right to argue was meaningless if McDaniels could still withdraw his guilty plea at that point. (ECF No. 18-8 at 12.)

*McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *See id*.

Having reviewed its determinations and rulings in adjudicating McDaniels' petition, the Court finds that none of those rulings meet the *Slack* standard. The Court therefore declines to issue a certificate of appealability for its resolution of McDaniels' petition.

## VI.   CONCLUSION

It is therefore ordered that the petition (ECF No. 5) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 12th Day of September 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE